UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

CHRISTOPHER W. LEGG, an individual, on
behalf of himself and all others similarly situated,

    Plaintiff,

v.                                        **COMPLAINT - CLASS ACTION**

SB PRODUCTIONS, INC., a Florida Corporation,
doing business as "Scarlett's Cabaret",

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND
INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*, THE TELEPHONE
CONSUMER PROTECTION ACT
JURY DEMAND**

1.    "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (January 18, 2012) (internal citations omitted). In an effort to enforce this fundamental federal right to privacy, Plaintiff files the instant class action complaint alleging violations of 47 U.S.C § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

In sum, Defendant has sent out thousands of unlawful text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

In order to redress these injuries, Plaintiff, on behalf of himself and the proposed class of similarly situated individuals, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendant has sent unwanted text messages in a manner which violates the right of privacy of the putative class members. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful text messages and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

All allegations contained herein are based upon information and belief of Plaintiff or the investigative efforts of the undersigned counsel:

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227. Venue in this District is proper because Plaintiff resides here and Defendant sends text messages to individuals residing in this District. This Court also has jurisdiction over Plaintiff's individual claim pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

**PARTIES**

3. Plaintiff, CHRISTOPHER W. LEGG ("Plaintiff" or "Mr. Legg"), is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

4. Defendant, SB PRODUCTIONS, INC. (hereinafter "Scarlett's Cabaret"), is a Florida Corporation, which formed in 2001 and operates several nightclubs in Florida and Ohio. Defendant conducts business under the trade name "Scarlett's Cabaret," often euphemistically referred to as a "gentlemen's club" but more accurately known to the public as a strip club. Among other forms of electronic media, Defendant promotes its nightclubs by sending out text message advertisements with the assistance of a third party mobile marketing company, iZigg, Inc., which operates at the behest of Defendant. iZigg, Inc. promotes a computer platform which allows its users to "[s]end mass text messages with information about upcoming sales, events, promotions and incentives, and

anything else you want to get out to your customers in just seconds." Source: http://www.sblaunchpad.com/products-izigg.php (last accessed January 5, 2012).

## A BRIEF OVERVIEW OF TEXT MESSAGING

5. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

6. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

7. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

8. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

4

9. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

10. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

12. Under the TCPA and pursuant to the FCC's January 2008 Declaratory

5

Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 FCC Rcd at 565 (¶ 10).

13. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

14. Many companies have websites which promote recurring "alert" programs in which text messages are sent *en masse* automatically to persons within a subscribed database. A consumer specifies the content which he or she wishes to receive within the parameters set by either the consumer or the content provider.

15. One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a weekly basis. Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed January 4, 2013).

## FACTUAL ALLEGATIONS SPECIFIC TO MR. LEGG

16. At some point in 2012, Plaintiff visited the Scarlett's Cabaret (Hallandale Beach) website in an effort to learn of events at the aforesaid nightclub; there he read an advertisement which stated that he could electronically subscribe through the website to receive mobile text messages (i.e. alerts) from the nightclub.

17. The express language which governs the Scarlett's Cabaret mobile alert program for all subscribers is posted verbatim on several different websites operated by Defendant and reads as follows:

## RECEIVE TXT/SMS UPDATES

**Thank you for signing up to receive our text messages. Scarlett's does not sent out more than 2 text messages a month! Don't miss out on invites to VIP and Open Bar parties!**

Source(s): http://scarlettscabaret.com/oregon/ (last accessed January 4, 2013); http://scarlettscabaret.com/hallandale/ (last accessed January 4, 2013); http://scarlettscabaret.com/toledo/ (last accessed January 4, 2013).

18. After subscribing (by entering his name and cellular telephone number through the aforesaid website), Defendant texted back a message from short code 90210, which read on Plaintiff's cellular telephone as follows:

```
To complete your website enrollment to
Scarletts [sic] FL Website, please reply: Y

If no reply is received, you will not be
enrolled
```

19. After receiving the aforementioned message, Plaintiff texted back "Y" to short code 90210 whereupon he received the following message from Defendant:

```
Scarlett's FL Website: Welcome! 4 msg/mo. Data
rates may apply. Reply STOP to cancel. Reply
HELP for help.
```

20.     In the month of December, Mr. Legg received exactly five (5) text messages from Scarlett's Cabaret.  Plaintiff received messages on the following dates: December 1, 2012; December 15, 2012; December 22, 2012; December 29, 2012; and December 31, 2012.  All text messages were sent from short code 90210 and promoted Defendant's business establishment.  The text messages at issue appear on Plaintiff's cellular telephone as below:





21.     Irrespective of whether this Court ultimately determines that the members of the putative class (as further described herein) expressly consented to

two (2) text messages per month or four (4) text messages per month, no subscriber could have possibly consented to receiving more than four (4) text messages per month from Defendant.

22.  According to the Scarlett's Cabaret profile page on the Facebook website, there are more than 1,500 people who "like" the nightclub; similarly, according to the Scarlett's Cabaret profile page on the Twitter website, the nightclub has more than 19,000 followers.  Both websites have been utilized to promote the Scarlett's Cabaret text message service, which is the subject of the instant lawsuit.

23.  Upon information and belief, all member of the putative class received more than the specified number of text messages per month.  The messages at issue were sent to said members *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the auto-dialer used by Defendant had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers or would otherwise qualify as a "predictive dialer."

## CLASS ACTION ALLEGATIONS

24.  This action is brought on behalf of a class consisting of all persons in the United States who subscribed to receive text messages for any "Scarlett's Cabaret" nightclub and were subsequently sent more than the specified number of

10

text messages per month from Defendant (or any marketer on behalf of Defendant) to their cellular telephone wherein said text messages were sent using an automatic telephone dialing system or a device which has the capacity to be used as same (including a predictive dialer) during the four year period prior to the filing of the complaint in this action through the date of certification.[1]

The above-cited class definition excludes all persons who were previously subscribed to receive text messages from "Scarlett's Cabaret" through Defendant's other marketing efforts wherein Defendant did not impose any monthly text message limitations.  Excluded from the Class are Defendant, their legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest.  Also excluded from the Class is the Judge to whom this case is assigned, the Judge's immediate family, and the undersigned law firm and its employees.  Plaintiff reserves the right to amend the above-stated Class definition based upon facts learned in discovery.

25.     Plaintiff alleges on information and belief based upon the Defendant's use of mass text messages that the class is so numerous that joinder of all members of the class is impractical.  There are more than forty-one (41) individuals in the Class as previously defined herein.

---

[1] The members of the putative class may be referred to herein as simply "the Class."

26. There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The common factual and/or legal issues common to each class member are as follows:

  (a) Whether Defendant's conduct is governed by the TCPA?

  (b) Whether the mobile spam sent by Defendant violated the TCPA?

  (c) Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

  (d) Whether Defendant should be enjoined from engaging in such conduct in the future?

27. Plaintiff's claim is typical of those of the class members. All claims are based on the same facts and legal theories.

28. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

29. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

  (1) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

  (2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

30. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole.

31. Mr. Legg requests certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief.

**COUNT I**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**

32. Plaintiff incorporates Paragraphs 1 through 31.

33. Defendant sent more than the specified number of monthly text messages to Plaintiff and the members of the putative class using an automatic telephone dialing system.

34. The excessive calls (i.e. text messages sent beyond the monthly limitation) were made without the prior express consent of the parties.

35. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

    (a) An order certifying this case to proceed as a class action;

    (b) Statutory damages at $500 dollars per call for negligent violations of the TCPA;

    (c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

    (d) Reasonable attorney's fees and costs; and

    (e) Such further relief as this Court may deem appropriate.

## COUNT II
## WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

36. Plaintiff incorporates Paragraphs 1 through 31.

37. Defendant sent more than the specified number of monthly text messages to Plaintiff and the members of the putative class using an automatic telephone dialing system.

38. The excessive calls (i.e. text messages sent beyond the monthly limitation) were made without the prior express consent of the parties.

39. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

    (a)    An order certifying this case to proceed as a class action;

    (b)    Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

    (c)    An injunction requiring Defendant to cease all communications in violation of the TCPA;

    (d)    Reasonable attorney's fees and costs; and

    (e)    Such further relief as this Court may deem appropriate.

## **JURY DEMAND**

Plaintiff demands trial by jury.

Dated this 5th day of January 2013.

Respectfully submitted,

By:/s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff*
664 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com